UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 14-1853 (L)
(7:10-cv-02097-MGL)

_____

First South Bank,

Plaintiff – Appellant,

v.

Fifth Third Bank NA,

Defendant – Appellee.

_____

Appeal From The United States District Court
For The District Of South Carolina

_____

**Response and Reply Brief of Appellant First South Bank (Page-Proof)**

_____

Joel W. Collins, Jr.
Collins and Lacy, P.C.
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660

Robert F. Goings
Goings Law Firm, LLC
Post Office Box 436
Columbia, South Carolina 29202
(803) 350-9230

Counsel for Appellant First South Bank

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. ii

STATEMENT OF ISSUES PRESENTED FOR REVIEW – RESPONSE ............ 1

STATEMENT OF THE CASE .................................................. 2

SUMMARY OF ARGUMENT – RESPONSE ................................... 2

ARGUMENT – RESPONSE ....................................................... 7

I.    The District Court Properly Denied Fifth Third's Motion for Judgment as a Matter of Law or for a New Trial on Fraud ................................................................... 8

        A.    The Evidence Supports that Fifth Third Made False Representations or Concealed Material Facts from First South ....................................................... 9

        B.    The Evidence Supports that First South Reasonably Relied on the Representations of Fifth Third ................................................................. 17

II.    The District Court Properly Denied Fifth Third's Motion for Judgment as a Matter of law or a New Trial for Breach of Contract .......................................... 21

        A.    The Evidence Supports that Fifth Third Materially Breached the Participation Agreement .................................. 22

        B.    The Evidence Supports that First South Sought to Timely Rescind the Contract ............................................. 25

        C.    The Evidence Supports that Fifth Third's Actions Proximately Caused First South's Damages ......................... 28

III.    The District Court Properly Granted First South's Motion for Taxation of Expert Witness Discovery Costs .............................. 32

CONCLUSION ............................................................... 36

## TABLE OF AUTHORITIES

**Cases**

*Ada Liss Grp. v. Sara Lee Corp.*, No. 06-CV-610,
  2010 WL 3910433, *9 (M.D.N.C. Apr. 27, 2010) ................................. 20
*American Laundry Machinery Co. v. Skinner*, 34 S.E.2d 190 (N.C. 1945) ........... 20
*Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) ................................... 8
*Brickell v. Collins*, 262 S.E.2d 387 (N.C. App. 1980) ........................................... 9
*Brooks v. Ervin Constr. Co.*, 116 S.E.2d 454 (N.C. 1960) ................................... 10
*Brown v. Butler*, 30 Fed. Appx. 870 (10th Cir. 2002) ........................................ 34
*Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536 (4th Cir.2003) ..................... 7
*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294 (4th Cir. 1998) ............................... 7
*Cunningham Charter Corp. v. Learjet, Inc.*, No. 07–cv–00233,
  2011 WL 1549214 (S.D. Ill. Apr. 22, 2011) ..................................................... 34
*Fleming v. United States*, 205 F.R.D. 188 (W.D. Va. 2000) ............................... 35
*Godfrey v. Res-Care, Inc.*, 598 S.E.2d 396 (N.C. App. 2004) ............................ 30
*Hall v. Sinclair Refining Co.*, 89 S.E.2d 396 (N.C. 1955) ................................... 20
*Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726 (N.C. App. 2009) ................................. 9
*Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471 (N.D. Cal. 2006) ........... 33
*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) ......... 7
*In re Spence*, 541 F.3d. 538 (4th Cir. 2008) ..................................................... 33
*Johnson v Owens*, 140 S.E.2d 311 (N.C. 1965) ............................................... 18
*Jones v. Southpeak Interactive Corp. of Delaware*,
  777 F.3d 658 (4th Cir. 2015) ............................................................................. 8
*King v. McMillan*, 594 F.3d 301 (4th Cir. 2010) ............................................... 7, 8
*Ndubizu v. Drexel Univ.*, No. 07–3068, 2011 WL 6046816, at *5
  (E.D. Pa. Nov. 16, 2011) ................................................................................. 34
*North Carolina Nat'l Bank v. Carter*, 322 S.E.2d 180 (N.C. App. 1984) ............. 18
*Odom v. Little Rock & I-85 Corp.*, 261 S.E.2d 99 (N.C. 1980) ............................. 9
*Oliver v. Hecht*, 177 S.E. 399 (N.C. 1934) ......................................................... 9
*Packer v. SN Servicing Corp.*, 243 F.R.D. 39 (D. Conn. 2007) ........................... 35
*Phelps-Dickson Builders, LLC v. Amerimann Partners*, 617 S.E.2d 664
  (N.C. App. 2005) .............................................................................................. 18
*Price v. City of Charlotte, N.C.*, 93 F.3d 1241 (4th Cir. 1996) ........................... 20
*Ragsdale v. Kennedy*, 209 S.E.2d 494 (N.C. 1974) ....................................... 8, 10
*Rogers v. Fenland*, 232 F.R.D. 581 (E.D. Tex. 2005) ................................... 33, 34
*Setzer v. Old Republic Life Ins. Co.*, 126 S.E.2d 135 (N.C. 1962) ..................... 10
*Shenkel v. Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*,
  658 S.E.2d 918 (N.C. 2008) ............................................................................. 21

*State v. Seraphem*, 368 S.E.2d 643 (N.C. App. 1988)............................................ 17
*Torres v. Oakland Scavenger Co.,* 487 U.S. 312 (1988) ........................................ 33
*Tradewinds Airlines, Inc. v. C-S Aviation Servs.*,
   733 S.E.2d 162 (N.C. App. 2012) ...................................................... 30
*Turner v. Duke Univ.*, 381 S.E.2d 706 (N.C. 1989) ................................................ 29
*Willen v. Hewson*, 622 S.E.2d 187 (N.C. App. 2005) ............................................ 17
*Williams v. Giant Food, Inc.,* 370 F.3d 423 (4th Cir. 2004)................................. 28
*Williams v. Power & Light Co.*, 250 S.E.2d 255 (N.C. 1979).............................. 29
*Wilson v. Wilson*, 134 S.E.2d 240 (N.C. 1964) ...................................................... 22

## Other Authorities

23 Am.Jur. *Fraud and Deceit* ...................................................................... 10

## Rules

Fed. R. App. P. 3.................................................................................. 32
Fed. R. App. P. 28............................................................................. 28, 32
Fed. R. Civ. P. 26............................................................................. 33, 34
Fed. R. Civ. P. 50................................................................................. 7
Fed. R. Civ. P. 59................................................................................. 8

## STATEMENT OF ISSUES PRESENTED FOR REVIEW – RESPONSE

1. Did the District Court properly deny Fifth Third's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial regarding First South's Claim for Fraud where the evidence presented at trial supports a reasonable conclusion that Fifth Third made false representations or concealed material facts from First South?

2. Did the District Court properly deny Fifth Third's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial regarding First South's Claim for Fraud where the evidence presented at trial supports a reasonable conclusion that First South reasonably relied on the representations of Fifth Third?

3. Did the District Court properly deny Fifth Third's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial regarding First South's Claim for Breach of Contract where the evidence presented at trial supports a reasonable conclusion that Fifth Third materially breached the Participation Agreement?

4. Did the District Court properly deny Fifth Third's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial regarding First South's Claim for Breach of Contract where the evidence presented at trial supports a reasonable conclusion that First South sought to timely rescind the contract?

5. Did the District Court properly deny Fifth Third's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial regarding First South's Claim for Breach of Contract where the evidence presented at trial supports a reasonable conclusion that Fifth Third's actions proximately caused First South's injuries and damages?

6. Did the District Court properly grant First South's Motion for Taxation of Expert Witness Costs for discovery in the amount of $7,943.75?

## STATEMENT OF THE CASE

First South incorporates the Statement of the Case set forth in its Principal Brief, including all subparts, as if set forth herein verbatim.

## SUMMARY OF ARGUMENT – RESPONSE

The District Court properly denied Fifth Third's motion for judgment as a matter of law or, in the alternative, for a new trial on First South's cause of action for fraud. Despite Fifth Third claims to the contrary, the clear weight of the evidence demonstrates that (1) Fifth Third intentionally made false representations or concealed facts from First South, and (2) First South reasonably relied on false statements made by Fifth Third.

The evidence before the jury proved that Fifth Third made false representations and concealed material facts from First South related to the Burton Creek loan, particularly with respect to sewer availability and the Tyson Guaranty.

At all times prior to and after the March 7, 2007 execution of the Agreement, Fifth Third represented to First South that written evidence of utilities had been obtained for the 204 lots as a condition precedent, when in fact only 74 taps were available. This misrepresentation was material as the primary source of repayment of the Loan was the sale of the 204 lots. Absent sewer availability, the remaining lots were not saleable. The misrepresentation regarding sewer availability was also made knowingly, or at least, in reckless disregard for the truth

in light of the fact that Lincoln County imposed a sewer moratorium on February 7, 2007, prior to First South signing the Agreement.

Fifth Third also represented the Loan was to be secured by the Tyson Guaranty. In the Commitment Letter, the Credit Memorandum, and the Participation Agreement, Fifth Third expressly stated that the guaranty would be signed before the Loan was closed. After the Loan closed, Fifth Third represented that the Tyson Guaranty was executed. In fact, the Tyson Guaranty was never properly executed; rather, the Tysons maintain they did not sign the Tyson Guaranty and the signatures set forth thereon are forgeries. Moreover, the notary to the Tyson Guaranty testified she falsified her notary on the document, as was a common practice at Fifth Third. The misrepresentations with respect to the Tyson Guaranty are material because the Tysons have "significant wealth" sufficient to satisfy any default of the Loan or judgment on the Tyson Guaranty. Testimony indicated the Loan would not have closed without the Tyson Guaranty as collateral. Fifth Third failed to disclose the irregularities concerning the signing and notarization of the Tyson Guaranty, and likewise, failed to disclose to First South the Tyson Guaranty was not obtained and never signed prior to or at the closing. (Trs. p. 1134, 1136). Fifth Third knew the Tyson Guaranty was not properly signed and notarized because the notary was falsified at the direction of Fifth Third's loan officer. At the very least, Fifth Third knew the Tyson Guaranty

was not signed when required, or made affirmative misrepresentations in reckless disregard for the truth in light of the fact that the loan officer knew the Tyson Guaranty had not been signed.

The clear weight of the evidence demonstrates First South reasonably relied upon Fifth Third's representations. Fifth Third was the "lead bank" in this transaction. First South was the "participating bank." For participation loans, the customary and common practice is for the participant bank to rely on the underwriting materials and representations provided by the lead bank. Given the nature of the relationship and the transaction, the evidence presented at trial supports First South's right to rely on the representations of Fifth Third. Moreover, Fifth Third made positive, affirmative representations to First South upon which First South is entitled to rely. Fifth Third affirmatively represented to First South that written evidence of utilities had been obtained for the 204 lots and that the Tyson Guaranty would be executed prior to the closing of the Loan. These representations were of the character to induce action by a person of a reasonable prudence.

Paragraph 10 of the Agreement, a purported exculpatory clause, does not absolve Fifth Third of obligations as to the effectiveness or validity of the Tyson Guaranty. The jury found the agreement was procured by fraud, and fraud in the inducement voids the terms of the agreement. Secondly, the clause is invalid to the

extent it precludes liability for intentional torts, recklessness, and gross negligent conduct.  Finally, the clause is also ambiguous when read together with the rest of the Agreement and must be construed in favor of First South.

The District Court properly denied Fifth Third's motion for judgment as a matter of law or, in the alternative, for a new trial as to First South's claim for breach of contract as the clear weight of the evidence demonstrates that (1) Fifth Third materially breached the Agreement, (2) rescission was timely, and (3) Fifth Third's acts and omissions proximately caused First South's damages.

The evidence was replete that Fifth Third materially and substantially breached the contract by failing to obtain the Tyson Guaranty as collateral to secure the loan.  A fully executed Tyson Guaranty was an express consideration for entering into the Agreement as demonstrated by the loan approval documentation. The documentation generated at closing also indicated that the Tyson Guaranty was necessary and material as collateral for this loan, and that, but for the Tyson Guaranty, the loan would not have closed.

First South also presented substantial evidence that Fifth Third materially and substantially breached the contract by failing to obtain approval of sewer utility from Lincoln County. In the Agreement, Fifth Third represented that the Loan would be evidenced or secured by "documents as the lender may determine to be necessary or desirable" and all other documents "delivered in connection

with the Loan Agreement," i.e. sewer approval letters. The lack of sewer availability was considered so material to this transaction that it was an event of default of the Loan Agreement. The materiality of the sewer approval was also established through testimony of Frank Callison, Ginez Perez, W.C. Lyerly, Olan Henderson, and Donald Brown.

The evidence presented at trial demonstrates that First South requested to rescind the contract after it learned the conditions precedent were not met, but was met with no choice but to bring this lawsuit. Further, the evidence demonstrated Fifth Third actively concealed the gross irregularities that characterized the Loan from First South such that First South could not know of the extent of Fifth Third's breach of the Agreement until discovery in this case.

The clear weight of the evidence also proves that Fifth Third's actions were the proximate cause of First South's damages. Fifth Third's misrepresentations caused First South to enter into the Agreement. Testimony at trial supports the reasonable conclusion that but for the representations regarding sewer availability, First South would not have become a participating bank. Testimony also established that First South would not have agreed to participate in the Loan if it knew about the failure to obtain the Tyson Guaranty and the mishandled closing.

The District Court properly granted First South's Motion for Taxation of Expert Witness Costs. There was no indication compelling payment for experts

would result in manifest injustice just because the experts did not testify at trial. Rule 26(b)(4)(E) pertains to experts "whose opinions *may* be presented at trial." Additionally, the reduced expert costs granted by the District Court were reasonable and supported by the evidence submitted by First South.

## ARGUMENT – RESPONSE

The Court of Appeals reviews *de novo* a district court's denial of a motion for judgment as a matter of law. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543 (4th Cir.2003); *see* Fed. R. Civ. P. 50(b). "[T]he issue for assessment on appeal is whether there was a legally sufficient evidentiary basis for a reasonable jury, viewing the evidence in the light most favorable to the prevailing party, to find for that party." *King v. McMillan*, 594 F.3d 301, 312 (4th Cir. 2010). In making this determination, the Court is not permitted to retry factual findings or credibility determinations reached by the jury. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). "If reasonable minds could differ about the verdict, [the Court is] obliged to affirm." *King*, 594 F.3d at 312; *see also IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303 (4th Cir. 2003) (The Court of Appeals affirms the denial of judgment as a matter of law if, "giving the non-movant the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him.").

In considering a motion for a new trial, the Court may weigh the evidence and consider the credibility of the witnesses; however, the Court should not grant a motion for a new trial unless (1) the verdict is against the clear weight of the evidence; (2) is based on evidence which is false; or (3) will result in a miscarriage of justice. *King*, 594 F.3d at 314-15. The Court of Appeals reviews the denial of a motion for a new trial for abuse of discretion, and must give the benefit of every doubt to the judgment of the trial judge. *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672-73 (4th Cir. 2015); *see* Fed. R. Civ. P. 59(a).

## I.  THE DISTRICT COURT PROPERLY DENIED FIFTH THIRD'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL ON FRAUD.

The essential elements of fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party. *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974). Additionally, a plaintiff must reasonably rely on the false representations. *Anderson v. Sara Lee Corp.,* 508 F.3d 181, 189 (4th Cir. 2007) (applying North Carolina law).

The jury unanimously found Fifth Third committed fraud. (Dkt. 240). Now, Fifth Third claims (1) there was insufficient evidence that Fifth Third intentionally made false representations or concealed facts from First South, and (2) there was insufficient evidence to establish First South reasonably relied on false statements

8

made by Fifth Third. Despite Fifth Third's assertions to the contrary, the clear weight of the evidence presented at trial supports the jury's finding with respect to the cause of action for fraud. *See Oliver v. Hecht*, 177 S.E. 399, 402 (N.C. 1934) (Under North Carolina law, the elements of fraud must be demonstrated by a preponderance of the evidence).

### A. The Evidence Supports that Fifth Third Made False Representations or Concealed Material Facts from First South.

A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose. *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. App. 2009).

With respect to an affirmative misrepresentation, the defendant must have known the representation to be false when making it, or the defendant must have made the representation recklessly without any knowledge of its truth and as a positive assertion. *Odom v. Little Rock & I-85 Corp.*, 261 S.E.2d 99 (N.C. 1980). Guilty knowledge will be implied from a statement made by a vendor who affirms a material fact which he does not know to be true. *Brickell v. Collins*, 262 S.E.2d 387, 390 (N.C. App. 1980). Similarly, under certain conditions, if a party to a bargain avers the existence of a material fact recklessly, the party will be held responsible for the falsehood. *Id*.

9

Silence must relate to a material matter known to the party and which it is legal duty to communicate to the other contracting party. *Setzer v. Old Republic Life Ins. Co.,* 126 S.E.2d 135, 137 (N.C. 1962) (citing 23 Am.Jur. *Fraud and Deceit* § 77). When parties are negotiating at arm's length, a duty to disclose exists when a party has taken affirmative steps to conceal material facts from the other. *See, e.g., Ragsdale v. Kennedy,* 209 S.E.2d 494 (N.C. 1974). A duty to disclose in arm's length negotiations also arises where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence. *See, e.g., Brooks v. Ervin Constr. Co.,* 116 S.E.2d 454 (N.C. 1960). Even though a party may have "no duty to speak under the circumstances, nevertheless if he does assume to speak he must make a full and fair disclosure as to the matters he discusses." *Ragsdale,* 209 S.E.2d at 501.

The clear weight of the evidence before the jury proved that Fifth Third made false representations and concealed material facts from First South related to the Burton Creek loan, particularly with respect to sewer availability and the Tyson Guaranty.

Regarding sewer availability, for purposes of soliciting a participation interest in the Loan, Fifth Third provided First South with a copy of the Burton Creek loan package, which indicated the principal source of repayment of the Loan

would be the sale of 204 lots to builders. (Trs. p. 157-158, 177, 457, 487, 728, 912, 915; Pls. Ex. 1, 3, 24, 26, 27). The loan package further indicated that Burton Creek would have sewer availability in adequate capacity for the 204 lots. (*Id.*).

At all times prior to and after the March 7, 2007 execution of the Agreement, Fifth Third represented to First South that written evidence of utilities had been obtained for the 204 lots as a condition precedent.  A summary of relevant loan documents shows the following:

1. **Credit Memorandum**: In the Credit Memorandum provided to First South, Fifth Third stated the 204 lots were to have access to "municipal water and sewer." (Pls. Ex. 24). As a "condition" to the participation loan, Fifth Third represented that it "must receive and approve the following items prior to closing," which specifically included "Utilities Approval." (*Id.* p 11). The cost estimates for this project that First South reviewed had costs associated with obtaining sewer availability for each lot.  (Pls. Ex. 27).

2. **Commitment Letter**: The commitment letter, dated February 22, 2007, and provided to First South, stated that evidence of utilities for the 204 lots was a "Condition Precedent." (Pls. Ex. 1). The paragraph of the letter captioned "Condition Precedent" provided "the Bank's loan commitment is subject to fulfillment of the following additional conditions precedent: c.  Utilities:  Evidence acceptable to the Bank of on-site availability of all utility services necessary for the construction and operation of the Project and its intended uses." (Id.).

3. **Loan Agreement**: The Loan Agreement represented that evidence of utilities was obtained as a "condition precedent" of the Loan.  (Pls. Ex. 3). Article III of the Loan Agreement, captioned as "Condition Precedent to Disbursement," provides that Loan proceeds would not be disbursed until "(t) Defendant shall have received and approved…(ii) letters from the applicable utility companies or governmental authorities confirming that all utilities necessary for the Improvements (defined as 204 single family lots) are available at the Land in sufficient capacity, together with

11

evidence satisfactory to Bank of paid impact fees, utility reservation deposits, and connection fees required to assure the available of such service." (Id. p. 10). Further, the Loan Agreement contains "Representations and Warranties" that "All utility services necessary for the development of the Land and the Lots are available at the boundaries of the Land, including electric and natural gas facilities, telephone service, water supply, storm and sanitary sewer facilities." (Id. p. 13).

4. **Closing Checklist**: Fifth Third provided First South with a "Closing Checklist" prepared by the Defendant dated March 8, 2007 that confirmed evidence of utilities for sewer was "Received." (Pls. Ex. 43). The Closing Instruction Letter provided that preconditions of the closing, i.e. written evidence of sewer availability, would be obtained prior to closing.

5. **Agreement**: In the Agreement, Fifth Third "represent[ed] and warrant[ed]" that it had in its possession the loan documents, and all documents delivered in connection with the Loan. (Pls. Ex. 2 ¶ 1, 4(a)). Written evidence of sewer availability was required to be delivered in connection with Loan. Fifth Third also represented that the Loan was not in default, but lack of requisite sewer availability was an event of default. (Id. ¶ 4; Pls. Ex. 3, ¶ 6.1).

Despite Fifth Third's representations to the contrary, Burton Creek did not have 204 taps available. Instead, only 74 taps were available for all phases of the 385 lot subdivision. (Trs. p. 760-772, 1544-1545; Pls. Ex. 5, 6).

Sewer availability was obviously a material issue affecting the principal source of repayment for the Loan. (Trs. p. 157-158, 177, 457, 487, 728, 912, 915; Pls. Ex. 1, 3, 24, 26, 27). For a residential subdivision, evidence of pre-existing sewer availability for each lot developed is essential to the success of the project and repayment of the loan. (Trs. p. 157-158, 177, 457, 487, 728, 912, 915; Pls. Ex. 1, 3, 24, 26, 27). Lots cannot be released to a builder without sewer approval. If

lots cannot be sold, the principal source of repayment of the Loan is substantially impaired. (Tr. 915-917). Indeed, Fifth Third's own internal policies recognized the significance of sewer availability. Fifth Third's "Credit Risk Policy Manual" required evidence of utilities as a condition precedent for a residential subdivision development loan. (Tr. p. 898-901, 922-924, 1365-1366; Pls. Ex. 7). The policy stated that availability of water and sewer utilities in adequate capacity is "critical" and the letters evidencing utilities are "required as part of the closing documents. (*Id*.). Additionally, Fifth Third's policy for "Land Acquisition & Development" provided it must "verify and document" all necessary governmental approvals have been obtained, including water and sewer availability. (Trs. p. 926; Pls. Ex. 7). Given the limited sewer availability, the loan never should have closed and was in default before it was sold to First South. (Tr. 197; 255-256; 911-913; 917-918 1052-1055; 1092). First South would not have participated in this loan if the lack of sewer permitting was disclosed. (Trs. 173-174, 195, 198, 1092, 1132, 1163).

Fifth Third knew about the limited sewer availability, and in spite of its obvious materiality, failed to inform First South. Instead, Fifth Third affirmatively misrepresented that the required sewer approval had been obtained. At the very least, these representations were made recklessly without any knowledge of their truth. The loan documents and Fifth Third's banking policies required it to obtain sewer approval as a condition precedent. (Trs. 1342-1373; Pls. Ex. 1, 3, 24, 26,

13

27). However, more than one month before the closing, Lincoln County issued a letter on February 5, 2007, stating it could only provide sewer service to 74 lots, *not* the required 204 lots. (Trs. p. 764-772; 1469-1470; Pls. Ex. 5, 6). Lincoln County did not commit to provide any additional sewer taps. (Trs. p. 764-772). Importantly, Fifth Third sent internal emails indicating that evidence of utilities was "missing" from the Burton Creek file after closing, but never told First South about the missing documentation. (Trs. 1093-1098; 1258; Pls. Ex. 12).

On July 1, 2008, more than a year later, Fifth Third disclosed to First South that the subdivision was significantly delayed. Fifth Third blamed the delay on Lincoln County imposing a moratorium on sewer availability. (Trs. p. 272-275, 1098-1100, 1126-1128, 1198-1199). However, rather than disclosing the limitation was imposed *prior to* the closing of the Loan, Fifth Third falsely claimed that Lincoln County had "recently" imposed a "sewer moratorium" limiting it to 74 lots. (Trs. 273-274, 585-586, 599; 1551-1552, 1133-1134, 1352-1354; 1434, Pls Ex. 16, 18.).

As to the Tyson Guaranty, Fifth Third represented to First South the Loan would be secured by an executed Personal Guaranty of Mr. and Mrs. Carlton Tyson. (Trs. p. 168-171, 174, 177-179, 191-192, 195-196, 198, 209-211, 225, 247, 265-266, 269-270, 290-291, 303-306, 336, 354-355, 430, 515, 592-593, 695, 713-714, 907, 945, 947-948; Pls Ex. 24, 26). The Commitment Letter, the Credit

14

Memorandum, and the Participation Agreement Fifth Third expressly stated that the guaranty would be signed before the Loan was closed. (Pls. Ex. 1, 2, 24). The Attorney Closing letter represented that the guaranty was signed. (Pls. Ex. 48). After the closing Fifth Third again expressly represented to First South that the Tyson Guaranty was executed. (Pls. Ex. 2, 3, 48).

In actuality, the Tyson Guaranty was ***never*** executed. (Trs. p. 621, 626-630; 649-650, 721, 949-950, 956, 1061). The Tysons claimed their signatures were forged. (Trs. 318, 666, 695, 747, 1168).[1] Fifth Third never called Milliken to testify against the allegations of his forging the Tyson Guaranty. The circumstantial evidence suggested that he was responsible for forging the Tysons' signatures. (Trs. p. 603-609; 949-950). What is clear, however, is that Tyson did not sign the Guaranty and Milliken instructed his assistant, Brenda Cobb, to falsify the notarization to the Tyson Guaranty. (Trs. p. 603-609, 910-911). According to Brenda Cobb, she was instructed by Milliken to falsely notarize the Tyson Guaranty using a date of March 8, 2007. (Trs. p. 603-609; 949-950; Pls. Ex. 46). On the signature page of the Tyson Guaranty, she swore that the Tysons appeared personally before her to execute the document. However, at trial she admitted that this was false and the Tysons never signed the Tyson Guaranty in front of her.

---

[1] Another document required to be executed before the Loan closed was a

(Id.). The Tysons maintained they did not sign the Tyson Guaranty. (Trs. 318, 666, 695, 747, 1168).

The Tyson Guaranty was a critical and material document to the Loan transaction. (Tr. p. 290-291, 303-304, 906-907, 916-917, 948, 950; 1003-1005). The Tyson Guaranty was necessary to the approval of this Loan because the Tysons have "significant wealth" sufficient to satisfy any default of the Loan or judgment on the Tyson Guaranty. (Trs. p. 265, 291, 904-909, 1005). As such, the Tyson Guaranty was a "condition precedent" of disbursement of the loan funds. (Trs. p. 198-199, 907; Pls. Ex. 1, 3, 24, 26, 27). Indeed, even Fifth Third admitted that the loan should not have closed without the Tyson Guaranty as collateral. (Trs. 1004-1005).

Fifth Third failed to disclose the irregularities concerning the signing and notarization of the Tyson Guaranty, and likewise, failed to disclose to First South the Tyson Guaranty was not obtained and never signed prior to or at the closing. (Trs. p. 1134, 1136). As discussed, *supra*, the evidence indicates Fifth Third knew the Tyson Guaranty was not properly signed and notarized. (Trs. p. 603-609; 949-950; Pls. Ex. 46).[2] The clear evidence similarly demonstrates that Fifth Third knew the Tyson Guaranty was missing. (Trs. p. 949-950). In a March 14, 2007 letter,

---

[2] *Cf.* "There is a presumption that one in possession of a forged instrument, who attempts to obtain money or goods with that instrument, has either forged or consented to the forging of the instrument." *State v. Seraphem*, 368 S.E.2d 643, 646 (N.C. App. 1988).

16

Fifth Third's closing attorney advised "I have not received the…Guaranty Agreement of Carlton & Carol Tyson," followed by a March 16, 2007 email from Milliken that he was "not aware [the Tysons] signed the guaranty." (Pls. Ex. 38, 51). Yet, Fifth Third never told First South about the missing guaranty. Instead, it continued to request funding from First South. First South first discovered this irregularity in April 2010, three years after the loan was made. (Tr. 1060-1061, 1068-1071, 1084-1091, 1134). First South would not have accepted a participation interest in the Loan if Fifth Third would have properly informed it that the Tysons would not, or did not, execute their personal guaranty.

In short, the clear weight of the evidence demonstrates that Fifth Third made false representations and concealed material facts from First South, especially with respect to limited sewer liability and the Tyson Guaranty.

## B. The Evidence Supports that First South Reasonably Relied on the Representations of Fifth Third.

A plaintiff's reliance on alleged false representations by the defendant must be reasonable. *Willen v. Hewson*, 622 S.E.2d 187, 191 (N.C. App. 2005). "One to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon." *North Carolina Nat'l Bank v. Carter*, 322 S.E.2d 180, 184 (N.C. App. 1984). "The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard

17

against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract [.]" *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 617 S.E.2d 664, 671 (N.C. App. 2005). The North Carolina Supreme Court has observed "reliance may be unreasonable, but in close cases, a party intentionally and falsely misrepresenting material facts so as to induce a party to action "should not be permitted to say in effect, 'You ought not have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.'" *Id*. (citing *Johnson v Owens*, 140 S.E.2d 311, 314 (N.C. 1965)).

The clear weight of the evidence demonstrates First South reasonably relied upon Fifth Third's representations. Fifth Third was the "lead bank" in this transaction. (Trs. 143). First South was the "participating bank." (Trs. p. 143). Fifth Third was responsible for obtaining documentation required for credit underwriting, the closing, ensuring that conditions precedent to the loan were met, and servicing of the Loan. (Trs. 142-160). For participation loans, the customary and common practice is for the participant bank to rely on the underwriting materials and representations provided by the lead bank. (Tr. 174-192, 196-199, 202-222, 224-225, 256-258, 285-300, 352, 436-439, 530, 554, 698-699, 735, 942, 1048-1049). Given the nature of the relationship and the transaction, the evidence presented at trial supports First South's right to rely on the representations of Fifth Third. (Trs. pp. 175-176, 180, 207, 215, 222, 294-299, 530, 647, 669, 735, 748).

Moreover, Fifth Third made positive, affirmative representations to First South upon which First South is entitled to rely. As discussed, *supra*, Fifth Third affirmatively represented to First South that written evidence of utilities had been obtained for the 204 lots as a condition precedent to the Agreement. Similarly, as discussed *supra*, Fifth Third affirmatively represented that the Tyson Guaranty would be executed prior to the closing of the Loan, and further, that the Tyson Guaranty had been executed. These representations were of the character to induce action by a person of a reasonable prudence, and were calculated to do so. The Loan was the largest of Mr. Milliken's career, and he stood to generate substantial commissions and promotions in closing this transaction. (Tr. 873-890, 1622-1623; Pls. Ex. 75, 76, 77, 78, 79, 80). However, Fifth Third would only approve this loan if Milliken could sell a participation interest to another bank to minimize exposure. (Trs. p. 873). Fifth Third was particularly concerned with minimizing exposure given that the purpose of the Loan was to enable Burton Creek, LLC to refinance a $1 million unsecured loan it previously received from Fifth Third and the fact that the loan with BB&T was coming due, allowing Fifth Third to obtain a first mortgage on the Burton Creek property.

Fifth Third also attempts to avoid the repercussions of its material misrepresentations by arguing Paragraph 10 of the Agreement absolves Fifth Third of any obligations as to the effectiveness or validity of the Tyson Guaranty, which

19

states in part, "The Lender shall not be responsible or liable (expressly or impliedly) in any manner to the Participant for the due execution, effectiveness, genuineness, validity or enforceability of the Loan Documents…" (Pl.'s Ex. 2). Fifth Third did not raise this argument at directed verdict. (Trs. p. 1221-1248). Thus, this argument cannot be considered now on appeal. *See Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1248-49 (4th Cir. 1996).

Regardless, Paragraph 10 has no applicability because the Agreement was procured by fraudulent inducement. Fifth Third cannot rely on contractual defense when the contract was entered into by fraud. *American Laundry Machinery Co. v. Skinner*, 34 S.E.2d 190, 192 (N.C. 1945) ("Fraud in the inducement vitiates a contract. Fraud in the inducement renders a contract void"); *Hall v. Sinclair Refining Co.*, 89 S.E.2d 396 (N.C. 1955) (reasoning that a fraud in the inducement would render release language unenforceable).

Additionally, an exculpatory clause has limited enforceability under North Carolina law. An exculpatory clause cannot absolve a party of liability for gross negligence, recklessness, and intentional torts. *Ada Liss Grp. v. Sara Lee Corp.*, No. 06-CV-610, 2010 WL 3910433, *9 (M.D.N.C. Apr. 27, 2010). At the very least, the clause is ambiguous. *See Shenkel v. Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008) ("An ambiguity exists in a contract when either the meaning of the words or the effect of provisions is uncertain or

20

capable of several reasonable interpretations."). Despite the purported limitation of liability in Paragraph 10, the Agreement also provides that Fifth Third would be liable for "the Lender's bad faith, willful misconduct or gross negligence." (Pl.'s Ex. 2). Under these circumstances, Paragraph 10 does not prevent liability.

In sum, the clear weight of the evidence demonstrates First South reasonably relied upon Fifth Third's representations. Fifth Third made positive, affirmative representations to First South upon which First South is entitled to rely.

## II.      THE DISTRICT COURT PROPERLY DENIED FIFTH THIRD'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL FOR BREACH OF CONTRACT.

The jury found in favor of First South on the breach of contract cause of action. (Dkt. 240). Now, Fifth Third contends that First South failed to prove by a preponderance of evidence that (1) a material breach caused the contract to fail of its essential purpose; (2) the Agreement was rescinded in a timely manner; and (3) that Fifth Third's conduct proximately caused any damage to First South. In so arguing, Fifth Third fails to appreciate the totality of the evidence in favor of First South, and disregards the evidence in the record that directly supports the jury's verdict. Thus, the District Court properly denied Fifth Third's motion for judgment as a matter of law or, in the alternative, for a new trial as to First South's claim for breach of contract.

## A. The Evidence Supports that Fifth Third Materially Breached the Participation Agreement.

Under North Carolina law, a breach is material and substantial where the violated contractual term "goes to the whole consideration of the contract; . . . is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or . . . is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted." *Wilson v. Wilson*, 134 S.E.2d 240, 242-43 (N.C. 1964). Based on jury instructions mutually submitted by the parties, the jury was charged to consider the subject matter and purpose of the contract, the intention of the parties, the scope of performance reasonably expected, any custom, practice or usage in similar situations, and if the parties knew or should have known of the existence of the breach. (Trs. pp. 1634-35). The court explained "A breach defeats the purpose of a contract when it effectively deprives the plaintiff of the benefit of its bargain." (Id.).

The evidence was replete that Fifth Third materially and substantially breached the contract by failing to obtain the Tyson Guaranty as collateral to secure the loan. A fully executed Tyson Guaranty was an express consideration for entering into the Participation Agreement. (Pl's Ex. 2, p. 1 "the Loan will be evidenced or secured by a…Guaranty agreement[] of … L. [Carlton] and M. Carol Tyson"). The loan approval documentation demonstrated the Tyson Guaranty was

22

a required condition precedent of the loan approval. (Pl's Ex. 1, 7, 24). Moreover, the documentation generated at closing further indicated that the Tyson Guaranty was necessary and material as collateral for this loan, and that, but for the Tyson Guaranty, the loan would not have closed. (Pl's Ex. 3, 48). Condition precedents to a contract are material terms of the transaction. (Trs. pp. 218-223) Mr. Perez testified that the Tyson Guaranty was "very material" to First South agreeing to enter into this transaction. (Trs. pp. 291-292). When Mr. Callison was asked "Was execution of guaranty agreements material to the loan?" he responded "Absolutely." (Trs. p. 198). All the documents that Mr. Callison relied upon in approving this loan provided that the Tyson Guaranty was obtained. (Trs. pp. 156-158, 169-195, 210-225). The Fifth Third's former employee, Donald Brown, even admitted that the Tyson Guaranty was a "material" and "critical" requirement of the loan, and that loan would have been neither approved nor closed without it. (Trs. pp. 906-909, 947-953).

Further, First South presented substantial evidence that Fifth Third materially and substantially breached the contract by failing to obtain approval of sewer utility from Lincoln County. In the Participation Agreement, the Fifth Third represented the "Loan will be evidenced or secured by…documents as the lender may determine to be necessary or desirable…and all other document…delivered in connection with the Loan Agreement." (Pl's Ex. 2, p. 1). This provision means all

23

documents necessary to fulfill the conditions precedent of the loan, which includes sewer approval letters.  (Tr. Trs. p. 192).  The lack of sewer availability was considered so material to this transaction that it became an event of default of the Loan Agreement.  (Pl's Tr. Ex. 3; Trs. p. 256).

The materiality of the sewer approval was established through testimony of several witnesses as well.  When asked, "Is full sewer utility approval for all the lots, is that a material term of this loan," Mr. Callison testified "Oh, absolutely, It's why it's a condition precedent." (Trs. p. 198).  Mr. Callison testified that sewer availability for all lots was such an indispensable part of what both parties intended, that the contract would not have been made with the covenant omitted. (Trs. pp. 144-147, 150-151, 153-156, 171, 173-174, 195-198, 202-206, 218-223, 256, 266, 272-275, 292, 433).  Mr. Perez testified that Fifth Third had the responsibility for ensuring that sewer was available for all lots financed or "enough to get the bank paid out."  (Trs. pp. 242-294).  Even Fifth Third's employee, Don Brown agreed that sewer availability was a condition precedent, and it was "impossible to sell the individual lots and take down lot release if you can't deliver sewer with the lots."  (Trs. pp. 912-920).  Don Brown further testified that he would have not approved the Burton Creek Loan if he knew the project lacked, or had limited, sewer availability.  (Trs. pp. 912-920).

24

The purpose of the Participation Agreement further supports the jury's conclusion that Fifth Third's substantial failures regarding the Guaranty Agreements and sewer capacity were material and substantial breaches of the Participation Agreement. First South funded a portion of the Burton Creek Loan in exchange for an undivided interest in a commercial acquisition and development loan with legitimate viability and security sufficient to repay the principle amount and interest. The evidence at trial proved that First South received an undivided interest in a development that had no chance of viability from the outset due to limited sewer capacity or repayment from the failure to obtain guaranties. The jury's verdict establishes that the jury found that the essential purpose of the Participation Agreement failed and that this failure was due to the Fifth Third's fraudulent misconduct.  These conclusions by the jury are both reasonable and substantiated by the evidence presented at trial. Therefore, First South presented overwhelming evidence of a material breach by Fifth Third that defeated the purpose of the contract.

### B. The Evidence Supports that First South Sought to Timely Rescind the Contract.

Fifth Third argues that First South offered no proof that it intended to timely rescind the contract.  The jury was properly instructed that "An election to cancel a contract is timely if it is made within a reasonable time after the breach *becomes known to or in the exercise of reasonable diligence should have become known* to

the plaintiff.  A person loses the right to cancel a contract if, after learning of the breach, it voluntarily engages in conduct that is consistent with or which recognizes the contract or fails to act or cancel within a reasonable time after the breach was or should have been discovered." (Trs. p. 1635 (emphasis added)).

The evidence presented at trial demonstrates that First South requested to rescind the contract after it learned the conditions precedent were not met.  These conditions were required before disbursement of the loan proceeds.  Mr. Lyerly testified that First South has "asked for our money back a number of times" but was given no choice other than to bring this lawsuit.  (Trs. pp. 1145-1146).  The jury listened to a voice mail message from Fifth Third's employee, Mike McAvoy, in 2008 where he assured First South several times that Fifth Third had plans to "buy out" or "take out" First South's interest in the loan when the sewer issue first materialized.  (Trs. pp. 316-317).  Fifth Third presented no evidence or testimony that would indicate First South did not seek to timely rescind the contract.  The testimony, and reasonable inferences to be drawn, strongly supports the intent to get paid back for this loan.

Further, based on the testimony and the evidence at trial, Fifth Third actively withheld from First South the true nature of the gross irregularities that it committed concerning this loan.  (Pl.'s Ex. 67, 54, 57).  The evidence shows that First South did not discover the issues concerning the falsified notary to the Tyson

26

Guaranty and claims of forgery until April 2010. (Trs. pp. 269-272, 1059-1061; Pl.'s Ex. 54). The requirement to timely rescind is triggered once the plaintiff has full knowledge of the circumstances. (Trs. p. 1635). First South was not provided full knowledge of the circumstances until conducting discovery in this case due to Fifth Third's prior misrepresentations and failures to disclose. Nonetheless, despite First South's demands, Fifth Third refused to buy First South's percentage of the loan. First South did not learn until discovery that Fifth Third failed to get any evidence of utilities since Fifth Third represented to First South that the lack of sewer was due to a post-closing sewer moratorium that was imposed in October 2007. (Trs. pp. 1051-1055, 1057-1063, 1069-1070, 1097-1104, 1126-1141).

The foregoing evidence justifies the jury's finding that First South requested to cancel the Participation Agreement through requests for Fifth Third to buy it out of the loan and that those requests were made within a reasonable time after it discovered Fifth Third's material breaches of the Participation Agreement despite Fifth Third's attempts to conceal its fraudulent misconduct.

Fifth Third's argument that First South's stipulation of a measure of damages under the NCUDTPA constitutes an admission that First South did not timely rescind is a logical fallacy. First, First South could not rescind the Participation Agreement where Fifth Third refused. Second, either First South elected rescission damages as Fifth Third so strenuously argues in opposition to

27

First South's NCUDTPA claim, or it did not. If Fifth Third now argues that First South did not rescind the Agreement, its arguments with respect to the NCUDTPA claim are moot.

Fifth Third also argues in a footnote that First South failed to prove it restored any consideration to Fifth Third to restore all parties to their relative positions, or that Fifth Third acted with bad faith, willful misconduct, or gross negligence, but offers no support or authority for its conclusion. Because Fifth Third did not assert any argument supporting these issues, they should be abandoned. Fed. R. App. 28(a)(8)(A), (b); *Williams v. Giant Food, Inc.,* 370 F.3d 423, 430 n.4 (4th Cir. 2004) (noting that appellate assertions not supported by argument are deemed abandoned).

## C. The Evidence Supports that Fifth Third's Actions Proximately Caused First South's Damages.

Fifth Third continues to blame the economy for First South's damages. One of the Fifth Third's primary arguments to the jury throughout the trial was that the economy was the proximate cause of First South's loss. The jury rejected this position because it lacks merit or, at a minimum, is unpersuasive when applying the applicable law to the evidence.

"Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." *Williams v. Power & Light Co.*, 250 S.E.2d 255, 258 (N.C. 1979).

"Causation is an inference of fact to be drawn from other facts and circumstances." *Turner v. Duke Univ.*, 381 S.E.2d 706, 712 (N.C. 1989). As the District Court instructed the jury, "there may be more than one proximate cause of damage." (Trs. p. 1646). Therefore, the plaintiff need not prove that the defendant's conduct was the sole proximate cause of the damage. But the plaintiff must prove by the greater weight of the evidence that the defendant's actionable conduct was a proximate cause of the damages it seeks." (Trs. p. 1646).

Causation must be analyzed in the context of the claims presented. Fifth Third's misrepresentations caused First South to enter into the Participation Agreement. The money that First South's funded under the Participation Agreement was based on Fifth Third's representations of material terms that were essential to the approval of the loan and First South agreeing to enter the Participation Agreement. The testimony supported that but for these representations, First South would not have agreed to be a participating lender. (Trs. p. 1092 (testifying that if First South had known of the lack of sewer availability that First South "would not have entered into the participation"). Fifth Third's own employee, who was responsible for the initial oversight of loans such as the one to Burton Creek, testified that the loan would not have been approved without confirmation of adequate sewer availability. (Trs. pp. 917-918).

As for the claim of fraud in the inducement, under North Carolina law, a plaintiff is entitled to a recovery that will "restore the plaintiff to its original position, to give back to him that which was lost as far as it may be done by compensation in money" and the purpose of this claim is to "make the plaintiff whole and to prevent the defendant from profiting from its fraudulent conduct." *Tradewinds Airlines, Inc. v. C-S Aviation Servs.*, 733 S.E.2d 162, 169 (N.C. App. 2012). "It is elementary that a plaintiff in a fraud suit has a right to recover an amount in damages 'which will put him in the same position as if the fraud had not been practiced on him.'" *Godfrey v. Res-Care, Inc.*, 598 S.E.2d 396, 404 (N.C. App. 2004). The damages that First South sustained were proximately caused by the fraudulent representations. The evidence substantiated this claim.

The evidence is clear that First South would not have agreed to participate in the Burton Creek loan if it knew about the failure to obtain the Tyson Guaranty, the mishandled closing, and the lack of sewer availability. First South agreed to fund this loan based on Fifth Third's misrepresentations that these conditions precedent were met. If Fifth Third had revealed the truth to First South, then First South would not have agreed to enter the Participation Agreement and would not have financed 36% of the Burton Creek loan. The testimony clearly established that First South would not have agreed to this transaction without the Tyson Guaranty as collateral.

30

Moreover, First South would not have agreed to this transaction without sewer approval.  In fact, testimony from Fifth Third's former employee Don Brown confirms that Fifth Third would not have approved this loan without obtaining sewer and the Tyson Guaranty.  He also testified that the Burton Creek project would have overcome the economy based on Carlton Tyson's guaranty and involvement. (Trs. pp. 987-989, 1003-1004).  Internal loan documentation generated by the Fifth Third confirms that the lack of sewer approval, not the economy, had a significant impact on the ability of the borrower to sell lots or develop a marketable subdivision.  (Pl.'s Ex. 7, 15, 16, 17, 53). It should also be noted that the economy was not troubled when the Participation Agreement was entered.  (Trs. p. 1003).

First South's acceptance of the Participation Agreement was based on representations that turned out to be untrue. Had Fifth Third accurately represented these matters to First South then First South would not have entered into the Participation Agreement, and therefore, would not have suffered these damages. Accordingly, the clear weight of the evidence supported the jury's finding that First South's damages were proximately caused by the Fifth Third.[3]

---

[3] Fifth Third also argues the breach of contract cause of action fails based on Paragraph 10 of the Agreement. The argument set forth, *supra* Section I.B., regarding Paragraph 10 applies equally to the breach of contract cause of action. As previously stated, Paragraph 10 does not bar claims related to the Tyson Guaranty.

In conclusion, the clear weight of the evidence demonstrates that a material breach caused the contract to fail of its essential purpose, and that the Agreement was rescinded in a timely manner. The clear weight of the evidence likewise demonstrates Fifth Third's conduct proximately caused any damage to First South. Accordingly, the District Court properly denied Fifth Third's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial with respect to the breach of contract cause of action.[4]

## III. THE DISTRICT COURT PROPERLY GRANTED FIRST SOUTH'S MOTION FOR TAXATION OF EXPERT WITNESS DISCOVERY COSTS.

Pursuant to Fed. R. App. P. 3(c)(1)(B), a notice of appeal must designate the judgment, order, or part thereof being appealed. Fifth Third designates the District Court's August 6, 2014 Order as being appealed, specifically the portion of the Order denying the Motion for Judgment as a Matter of Law or for a New Trial. (Dkts. 292, 296). Fifth Third's Notice of Appeal makes no mention of the issue of expert witness costs. (Dkt. 296). Therefore, the issue of expert fees is not properly

---

[4] Fifth Third also argues the District Court's Order (ECF 292) is insufficient as the District Court did not make any specific findings of fact with respect to particular pieces of evidence supporting the fraud and breach of contract causes of action. Fifth Third cites to no authority which requires the District Court to do so. Fed. R. App. 28(a)(8)(A) and (b). Regardless, as set forth herein, the clear weight of the evidence at trial supports the jury's findings with respect to the breach of contract and fraud claims such that Fifth Third's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial was properly denied.

before this Court. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317 (1988); *In re Spence*, 541 F.3d. 538, 543 (4th Cir. 2008).

Assuming *arguendo* the issue of expert fees is properly before the Court, the District Court properly granted First South's Motion for Taxation of Expert Costs.

Under Fed. R. Civ. P. 26(b)(4)(E), unless manifest injustice would result, the Court must require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A). Courts have generally found that "manifest injustice" occurs only where the deposing party is indigent or if requiring the party to pay a deposition fee would create an undue hardship. *Harris v. San Jose Mercury News, Inc.,* 235 F.R.D. 471, 473 (N.D. Cal. 2006). Fifth Third is not indigent.

Fifth Third argues it is unjust to require it to pay expert costs for witnesses who did not testify at trial, relying on *Rogers v. Fenland,* 232 F.R.D. 581, 582 (E.D. Tex. 2005). The *Rogers* court allowed for fee awards for time clearly spent in preparation for depositions, travel to depositions, and in depositions, even for experts not called at trial. However, the court concluded that to "require a party to pay for the costs of a witness who was not even called, and against whom the court had sustained a *Daubert* challenge is manifestly unjust." *Id.* at 583. Fifth Third's argument and reliance on *Rogers* fails to establish manifest injustice. Even *Rogers*

permitted the recovery of some reasonable fee amounts related to deposition preparation, travel, and deposition testimony.

Fifth Third has not demonstrated that compelling payment for experts would result in manifest injustice just because Mr. Steele and Mr. Watson did not testify at trial. Rule 26(b)(4)(E) pertains to experts "whose opinions *may* be presented at trial." Fed. R. Civ. P. 26(b)(4)(A) (emphasis added). There is no language in the Rule that specifically limits compensation to experts whose opinions were ultimately presented at trial. Rather the rule applies in the context of the discovery process, not trial. Thus, Fifth Third is not automatically excused from reimbursing First South for the expert fees on this ground.

Other courts addressing this issue agree. *See Brown v. Butler,* 30 Fed. Appx. 870, 876 (10th Cir. 2002) (recognizing that the choice not to call an expert witness at trial does not preclude an award of expert discovery costs); *Cunningham Charter Corp. v. Learjet, Inc.,* No. 07–cv–00233, 2011 WL 1549214 (S.D. Ill. Apr. 22, 2011) (reasoning that experts costs would be granted even though the expert's testimony was excluded.); *Ndubizu v. Drexel Univ.,* No. 07–3068, 2011 WL 6046816, at *5 (E.D. Pa. Nov. 16, 2011) (requiring payment for deposition of experts who did not testify at trial or testify in accordance with their reports based on a plain reading of the Rules).

Fifth Third also argues First South did not prove the experts' fees were reasonable. The party seeking reimbursement bears the burden of showing the requested fees and expenses are reasonable. *See Packer v. SN Servicing Corp.,* 243 F.R.D. 39, 42 (D. Conn. 2007). Ultimately, it is in the Court's discretion to set an amount for payment that it deems reasonable. *Fleming v. United States,* 205 F.R.D. 188, 189 (W.D. Va. 2000).

Essentially, Fifth Third contends the expert fees are not reasonable because the expert fees are allegedly excessive or the entries include matters which should not be taxed. In so arguing, Fifth Third ignores the fact that the District Court addressed those matters in its assessment of the fees. In calculating the expert costs, the District Court deducted fees associated with conference deposition preparation. With respect to Mr. Watson, the District Court reduced his bill to exclude three hours of travel time. Regarding Mr. Steele, the District Court specifically noted block billing and general nature of Mr. Steele's time entries, taking it into account when the District Court awarded half of the requested amount for Mr. Steele's deposition. The documentation submitted by First South supports these reduced figures and Fifth Third has failed to point to any evidence which demonstrates otherwise. See (ECF No. 247–2; ECF No. 245–2; ECF Nos. 245–1).

## CONCLUSION – RESPONSE

For the foregoing reasons, First South respectfully requests this Court find the District Court properly denied Fifth Third's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial regarding First South's claims for fraud and breach of contract. Additionally, First South respectfully requests this Court find the District Court properly granted First South's Motion for Taxation of Expert Costs. Further, First South requests this Court grant its relief requested in its appeal.

## REQUEST FOR ORAL ARGUMENT

First South respectfully requests oral argument on this appeal.

Respectfully submitted,

By: _____
Joel W. Collins, Jr. (Fed. ID#: 224)
Collins and Lacy, P.C.
Post Office Box 12487 (29211)
1330 Lady Street, Sixth Floor
Columbia, South Carolina 29211
(803) 256-2660
(803) 771-4484 (f)

Robert F. Goings (Fed. ID#: 9838)
Goings Law Firm, LLC
914 Richland Street, Suite A-101
Post Office Box 436 (29202)
Columbia, South Carolina 29201
(803) 350-9230
(877) 789-6340 (f)

Date:  April 9, 2015                    *Attorneys for Appellant First South Bank*

36

## CERTIFICATE OF SERVICE

I certify that on April 9, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

> Frank H. Gibbes, III (#2084)
> Gibbes Burton, LLC
> fgibbes@gibbesburton.com
> 308 East Saint John Street
> Spartanburg, South Carolina 29302

> Alan J. Statman
> ajstatman@statmanharris.com
> Statman, Harris & Eyrich, LLC
> 3700 Carew Tower
> 411 Vine Street
> Cincinnati, Ohio 45202

s/    Robert F. Goings

Date: April 9, 2015